**BLANK ROME LLP**
Jeremy J. O. Harwood
Rocco Cavaliere
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 885-5000
Fax: (212) 885-5001

Attorneys for the Petitioner

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

**In re:**                                                   :    **Chapter 15**
                                                             :
**Daewoo Logistics Corporation,**                            :    **Case No. 15558 (BRL)**
                                                             :
    **Debtor in a Foreign Proceeding**             :
------------------------------------------------------------- X


# MEMORANDUM OF LAW IN SUPPORT OF
## CHAPTER 15 PETITION FOR RECOGNITION OF A FOREIGN
## MAIN PROCEEDING AND RELATED PROVISIONAL RELIEF

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

THE BASIC FACTS............................................................................................................... 1

    A.    The Korean Bankruptcy Proceeding ...................................................................... 1

    B.    The Rule B Attachments ........................................................................................ 2

ARGUMENT ......................................................................................................................... 3

    POINT I .......................................................................................................................... 3

    PETITIONER SEEKS IMMEDIATE INTERIM RELIEF TO PREVENT A
    "RACE TO THE COURTHOUSE" ............................................................................. 3

    A.    The Relief Requested Is Authorized Under the Bankruptcy Code ......................... 5

    B.    The Petitioner Satisfies the Requirements for a Temporary Restraining
        Order ...................................................................................................................... 7

    C.    The Petitioner Satisfies the Requirements for a Permanent Injunction ................. 8

    D.    Likelihood of Success on the Merits...................................................................... 9

        (i)    The Korean Bankruptcy Proceeding is a Foreign Proceeding .................... 9

        (ii)    The Petitioner is a Foreign Representative ................................................. 10

        (iii)    Inadequacy of Legal Remedy ..................................................................... 11

        (iv)    The Balance of the Hardship Tips Decidedly in Favor of the
                Petitioner ..................................................................................................... 12

    POINT II ........................................................................................................................ 12

    THE KOREAN BANKRUPTCY PROCEEDING SHOULD BE RECOGNIZED
    AS A FOREIGN MAIN PROCEEDING ..................................................................... 12

    A.    This Chapter 15 Case Was Properly Commenced ................................................ 12

    B.    This Court Has Jurisdiction to Recognize the Pending Korean Bankruptcy
        Proceeding and Grant the Relief Requested .......................................................... 13

133008.01600/6768793v.9

C.     This Case Is A Proper Case Under Chapter 15 ........................................................... 13

       (i)       The Case Concerns a Foreign Proceeding ................................................. 14

       (ii)      The Case Was Commenced by a Foreign Representative ......................... 15

       (iii)     The Foreign Proceeding Should be Recognized as a Foreign Main Proceeding ................................................................................................. 15

D.     Recognition of the Korean Bankruptcy Proceeding Is Proper and Should be Granted ............................................................................................................. 17

CONCLUSION .............................................................................................................................. 20

133008.01600/6768793v.9

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.,
460 F. 3d 434 (2d Cir. 2006)..................................................................................................2

Cornfeld v. Investors Overseas Svcs., Ltd.,
471 F. Supp. 1255 (S.D.N.Y. 1979).......................................................................................18

CSL Australia Pty. Ltd. v. Britannia Bulkers PLC et al,
2009 U.S. Dist. LEXIS 81173 (Sept. 8, 2009)...............................................................4, 6, 8

Cunard S.S. Co. v. Salen Reefer Services A.B.
773 F.2d 452 (2d Cir. 1985).....................................................................................................4

Daewoo Motors Corp. v. GM Motors Corp.,
Case. No. 04-158878, 2006 WL 2327562 (11th Cir. (Fla.) August 11, 2006).........................19

Fidelity Mortgage Investors v. Camelia Builders, Inc.,
550 F.2d 47 (2d Cir. 1976), cert denied, 429 U.S. 1093, reh'g denied, 430 U.S. 976
(1977)...................................................................................................................................6, 8

Gorman v. Coogan,
273 F. Supp.2d 131 (D. Maine 2003) ......................................................................................7

Hilton v. Guyot,
159 U.S. 113 (1895)...............................................................................................................18

In re Atlas Bulk Shipping A/S,
09-10314, 404 B.R. 726 (Bankr. S.D.N.Y. Apr. 27, 2009) ......................................................4

In re Banco Nacional de Obras v. Servicios Publico, S.N.C.,
91 B.R. 661 (Bankr. S.D.N.Y. 1988)........................................................................................6

In re Bear Stearns Hogh-Grade Structured Credit Strategies Master Fund, Ltd.,
374 B.R. 122 (Bankr. S.D.N.Y. 2007), aff'd 389 B.R. 325 (S.D.N.Y. 2008) .......11, 13, 16, 17

In re Culmer,
25 B.R. 621 (Bankr. S.D.N.Y. 1982)........................................................................................6

In re Daewoo Corporation,
Case. No. 06-12242 (Bankr. S.D.N.Y.) ..................................................................................19

In re Lines,
81 B.R. 267 (Bankr. S.D.N.Y. 1988)......................................................................................12

133008.01600/6768793v.9

In re Petition of Kyu-Byung Hwang,
    309 B.R. 842 (Bankr. S.D.N.Y. 2004)......................................................................19

In re Sphinx, Ltd.,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006).............................................................11, 16

In re Treco,
    240 F.3d 148 (2d Cir. 2001).............................................................................18

In re TriGem Computer Inc.,
    Case No. 05-50052 (Bankr. CD Cal.)................................................................19

In re Youngchang Co.,
    Case No. 06-40043 (Bankr. WD Wa.)..............................................................19

New York State National Organization for Women v. Terry,
    704 F. Supp. 1247 (S.D.N.Y.), aff'd as modified, 886 F.2d 1339 (2d Cir. 1989), cert.
    denied, 495 U.S. 947 (1990) ..............................................................................8

Travellers Int'l AG v. Trans World Airlines, Inc.,
    722 F. Supp. 1087 (S.D.N.Y. 1989), aff'd 41 F.3d 1570 (2d Cir. 1994)..............8, 12

United States v. J.A. Jones Constr. Group, LLC,
    333 B.R. 637 (E.D.N.Y. 2005) ...........................................................................3

**STATUTES AND RULES**

11 U.S.C. § 362....................................................................................................1, 3

11 U.S.C. § 1501(a)(3)..............................................................................................14

11 U.S.C. § 1501(b)(1) .............................................................................................14

11 U.S.C. § 1517......................................................................................................17

11 U.S.C. § 1517(b)(1) .......................................................................................11, 16

11 U.S.C. §§ 1519......................................................................................................3

11 U.S.C. § 1519(a) ...................................................................................................5

11 U.S.C. § 1519(a)(3)................................................................................................5

11 U.S.C. § 1519(e) ...................................................................................................7

11 U.S.C. § 1520.......................................................................................................1

11 U.S.C. §§ 1520 and 1521 .......................................................................................9

# TABLE OF AUTHORITIES

(continued)

11 U.S.C. §1521(a)(3), (4) and (7).................................................................................................5

28 U.S.C. §§ 157.........................................................................................................................13

28 U.S.C. § 157(b)(2)(P)............................................................................................................13

28 U.S.C. § 1410(3)....................................................................................................................13

F.R.B.P 7065...........................................................................................................................1, 7

F.R.C.P 65....................................................................................................................................1

F.R.C.P. 65(b)...............................................................................................................................7

Supplemental Rule B of the Supplemental Rules for Admiralty or Maritime Claims ...............2, 7

## PRELIMINARY STATEMENT

Mr. Yong-Nam Ahn, as the court appointed receiver (the "Petitioner") of Daewoo Logistics Corporation (the "Company"), the foreign representative, in the Company's proceeding (the "Korean Bankruptcy Proceeding") under the Republic of Korea's Debtor Rehabilitation and Bankruptcy Act (the "DRBA") pending before the 8th Bankruptcy Division of the Seoul Central District Court (the "Korean Bankruptcy Court"), by his special United States counsel, Blank Rome LLP, respectfully submits this Memorandum of Law in support of his request for (i) provisional relief during the gap period prior to the Court hearing on recognition of the Korean Bankruptcy Proceeding as a "foreign main proceeding," pursuant to Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 7065 of the Federal Rules of Bankruptcy Procedure and Rule 65 of the Federal Rules of Civil Procedure, as requested in the Ex Parte Application for Provisional Relief Pending Recognition of a Foreign Main Proceeding (the "Application")[1] and (2) in support of recognition of a "foreign main proceeding."

## THE BASIC FACTS

### A.    The Korean Bankruptcy Proceeding

2.    The Petitioner commenced this Chapter 15 case seeking recognition of the Korean Bankruptcy Proceeding as a "foreign main proceeding" for the purpose of obtaining relief in aid of the Korean Bankruptcy Court and so that the Company may be afforded the accompanying relief, including the automatic stay under 11 U.S.C. § 362, upon recognition pursuant to 11 U.S.C. § 1520. In the interim, however, the Company requires immediate protection in the

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

United States from the commencement or continuation of actions against the Company and the seizure of the Company's assets.

## B. The Rule B Attachments

3. As identified in Petitioner's Rule 1007(a)(4) Lists of, _inter alia_, U.S. litigation, there are thirteen admiralty cases pending against the Company (the "Actions").

4. The majority of the Actions are pre-judgment attachment actions under Supplemental Rule B of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule B") See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F. 3d 434, 437-438 (2d Cir. 2006) (discussing history and background of Rule B).

5. Pursuant to the Rule B actions creditors have attached and continue to seek to attach the Company's electronic fund transfers ("EFTs").

6. In particular, in an action filed in the Southern District of New York styled SAGA FOREST CARRIERS INT'L AS v. DAEWOO LOGISTICS CO. LTD. and DAEWOO LOGISTICS CORP., 08 CV 10087 (SAS) (S.D.N.Y.) (the "SAGA FOREST ACTION") plaintiff Saga Forest Carriers Int'l ("Saga Forest") froze approximately $609,638 belonging to the Company pursuant to Rule B and as security for its claim in London arbitration (the "Rule B Attachments").

7. Saga Forest obtained an interim arbitration award against the Company in the London arbitration in the amount of $609,638.61 (the "London Award").

8. Saga Forest has filed a motion dated August 21, 2009 in the SAGA FOREST Action seeking confirmation of the London Award as a "partial judgment" and payment of it from the Rule B Attachments.

2

9.     The New York District Court and Saga Forest have been apprised of Daewoo's intention file its Chapter 15 petition to prevent, <u>inter alia</u>, Saga Forest obtaining a preference by virtue of its Rule B attachment action.

## ARGUMENT

### POINT I

### PETITIONER SEEKS IMMEDIATE INTERIM RELIEF TO PREVENT A "RACE TO THE COURTHOUSE"

10.     The Petitioner requests immediate, interim relief from this Court in the form of a temporary restraining order and preliminary injunction enjoining any commencement or continuation of litigation against the Company including continuation of any litigation against the Company of which it has not yet received notice, and the seizure of any of the Company's assets. See 11 U.S.C. §§ 1519. The Petitioner requests this interim stay until the recognition hearing in order to maintain the status quo and to avoid wasting assets of the Company or unfairly disadvantaging the Company's creditors.

11.     Upon the Court's recognition of a foreign main proceeding, section 1520(a)(1) of the Bankruptcy Code states that the automatic stay provisions of section 362 of the Bankruptcy Code apply to protect the Company from commencement or continuation of any claims as well as any act to take possession of the Company's property. <u>Id.</u>; <u>see also</u> <u>United States v. J.A. Jones Constr. Group, LLC</u>, 333 B.R. 637, 638 (E.D.N.Y. 2005) (stating that once a foreign bankruptcy proceeding is recognized, a wide range of relief immediately becomes available, including the automatic stay provision of section 362).

12.     Chapter 15 has been invoked in at least shipping chapter two cases this year to obtain exactly the interim relief sought here, namely to prevent a "race to the Courthouse" by Rule B plaintiffs.

3

13.     In <u>In re Atlas Bulk Shipping A/S</u>, 09-10314, 404 B.R. 726 (Bankr. S.D.N.Y. Apr. 27, 2009) numerous Rule B plaintiffs had obtained attachment of Atlas Bulk's EFTs in this district, both before and after it filed its bankruptcy proceeding in Denmark.

14.     Atlas Bulk subsequently filed its Chapter 15 petition in this Court and sought <u>vacatur</u> of all the Rule B attachments and repatriation of the attached EFTs to what was recognized to be a foreign main proceeding.

15.     Judge Glenn granted the <u>vacatur</u> based on comity with the Danish case.

16.     More recently still, District Judge Leisure in <u>CSL Australia Pty. Ltd. v. Britannia Bulkers PLC et al</u>, 2009 U.S. Dist. LEXIS 81173 (Sept. 8, 2009) (Annex A hereto) considered Britannia A/S' request to vacate the plaintiff's Rule B attachment and turnover of the attached funds to its trustee in its Danish bankruptcy proceeding.   Plaintiff, "CSL", responded by asserting an entitlement, <u>inter alia</u>, to confirm as a judgment a Singapore arbitration award it had obtained on the merits of the dispute, for which it had originally obtained the attachment.

17.     The Court discussed pre-Chapter 15 cases, including <u>Cunard S.S. Co. v. Salen Reefer Services A.B.</u> 773 F.2d 452, 458 (2d Cir. 1985) (affirming <u>vacatur</u> of Rule B attachment against Swedish debtor) and held:

> The Court finds that vacatur of the amended order of attachment is supported by principles of comity.  The Court has reviewed the unrebutted evidence Britannia A/S has proffered on Danish bankruptcy law.  Nothing in the record indicates that deference to the Danish Court would violate or infringe the laws or public policy of the United States, or that the Danish proceedings are procedurally unfair.
>
> *   *   *
>
> In this vein, "[p]ermitting the Rule B attachment to stand would run afoul of principles of international comity," <u>Transfield ER Cape Ltd. v. STX Pan Ocean Co.</u>, No. 09 Civ. 1250, 2009 U.S. Dist. LEXIS 21185, at *13 (S.D.N.Y.

4

Mar. 17, 2009) Koetl, J.), by enabling CSL to make an end-run around the Danish Court's explicit proscription against disposition of a debtor's property outside of the bankruptcy proceeding, and the unconditional dissolution under the Danish Bankruptcy Code of all attachments made prior to the bankruptcy.

In a similar situation, In re Atlas, currently proceeding under chapter 15 of the Bankruptcy Code, the Bankruptcy Court vacated certain Rule B attachments against Atlas Shipping ("Atlas") and related companies, and turned garnished funds over to the foreign representative for administration in Atlas's Danish bankruptcy proceeding. Some of the attachments against Atlas were obtained before the chapter 15 petitions were filed, although neither Atlas nor the foreign representative sought to vacate those attachments in the district court under Rule E(4)(f). Id at *9.

Id. at *12-15.

18.     Both decisions are entirely on point and particularly apt given the attempt by Saga

Forest, a Norwegian corporation, to "end run" the Korean Rehabilitation Proceeding in exactly

the same way as CSL.

## A.     The Relief Requested Is Authorized Under the Bankruptcy Code

19.     Section 1519(a)(3) authorizes the Court to grant "relief of a provisional nature"

from the time a Chapter 15 petition is filed until the court rules on that Chapter 15 petition,

where such relief is "urgently needed to protect the assets of the debtor or the interests of the

creditors." 11 U.S.C. § 1519(a). Section 1519(a) specifically allows the Court to enter relief of

the kind requested herein. Id., see also 11 U.S.C. §1521(a)(3), (4) and (7) (setting forth additional

forms of relief allowed in a provisional order as incorporated by reference in 11 U.S.C. §

1519(a)(3)). Section 105(a) of the Bankruptcy Code also allows the Court to "issue any order…

necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). Section

105(a) has been cited in conjunction with former section 304 of the Bankruptcy Code to allow

bankruptcy courts to mold relief in near blank check fashion. In re Culmer, 25 B.R. 621, 624 (Bankr. S.D.N.Y. 1982). As such, the relief sought by the Petitioner is within the broad power of this Court as clearly contemplated in sections 1519, 1521 and 105 of the Bankruptcy Code.

20.     Moreover, the relief requested by the Petitioner, being exactly the kind of relief contemplated by the above provisions, has been granted in other shipping Chapter 15 cases. See e.g. In re Samsun Logix Corp., ("Samsun") Chapter 15 Case No. 09-11109 (SMB) (Bankr. S.D.N.Y. 2009); In re Armada (Singapore) PTE. LTD., Chapter 15, Case No. 09-10105 (JMP) (Bankr S.D.N.Y. 2009), In re Britannia Bulk Plc, Chapter 15, Case No. 0814543 (REG) (Bankr. S.D.N.Y. 2008).

21.     In the Application the Petitioner has asked this Court to immediately stay the commencement or continuation of any litigation against the Company and its assets, or proceeds thereof and the seizure of any of the Company's assets. The Injunctive relief request ed is necessary as cited under prior Section 304 cases, to "prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group." In re Banco Nacional de Obras v. Servicios Publico, S.N.C., 91 B.R. 661, 661 (Bankr. S.D.N.Y. 1988), See also, Britannia, supra. It is also necessary so that the Company's affairs can be centralized in a single forum in order to maximize the creditors' interests. See Fidelity Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 55 (2d Cir. 1976), cert denied, 429 U.S. 1093, reh'g denied, 430 U.S. 976 (1977).

22.     Additionally, the relief requested is needed to protect the assets of the Company from the initiation or continuation of pre-judgment enforcement actions under Rule B; without such relief, the Company is exposed to an imminent risk of further pre-judgment attachment of

6

all of its U.S. dollar electronic fund transfers ("EFTs") litigation and other actions against its U.S. based assets, which would result in a "race to the courthouse" by all parties.

23.    Section 1519(e) provides that "[t]he standards, procedures, and limitations applicable to an injunction shall apply to [a request for provisional] relief under this section." 11 U.S.C. § 1519(e). As discussed below, the Petitioner is able to show that he and the Company can meet the requirements for a temporary restraining order and preliminary injunction.

**B.    The Petitioner Satisfies the Requirements for a Temporary Restraining Order**

24.    The Petitioner meets the requirements for a temporary restraining order under Rule 65(b) of the Federal Rules of Civil Procedure, which is made applicable in this case by Rule 7065 of the Federal Rules of Bankruptcy Procedure. Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, in order to obtain an ex parte temporary restraining order, the applicant must show that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." See, e.g., TKR Cable v. Cable City Corp., 167 F.3d 196, 198 (3d Cir. 2001) (granting ex parte temporary restraining order against defendant to enjoin further sale of cable television descramblers); Gorman v. Coogan, 273 F. Supp.2d 131, 134 (D. Maine 2003) (issuing ex parte temporary restraining order to prevent corporation from indemnifying current directors' expenses in defending legal action because company faced imminent bankruptcy if temporary restraining order was not entered).

25.    As described in the Application, the requested provisional relief is required to preserve the Company and its assets, and to ensure that all of the Company's creditors receive equitable treatment by way of the claims process in the Korean Bankruptcy Proceeding. The threat to the Company's assets here in the United States under Rule B is very real and imminent as Saga Forest is already seeking a partial judgment against Daewoo in the sum of $609,638.61

7

in respect of the Interim Award and the turnover of that amount from Garnishee Banks obtained under Rule B. Such a payment would be preferential in respect of other creditors of Daewoo. See Britannia, supra. A number of other Rule B plaintiffs will likely do the same. While Daewoo has given notice to the District Court and Saga Forest of its intention to file this petition, it is necessary that this Court grant the relief requested without prior notice to all of the Company's creditors located in the United States.

26. Moreover, a hearing on actual notice to identified parties in interest, including Saga Forest, would be scheduled within ten days of entry of the order, as in the several other shipping Chapter 15 cases, and thus the period in which parties would be subject to the ex parte restraining order would be minimal. The order to show cause also provides that parties have a right to request relief from the temporary restraining order prior to the date scheduled for the hearing on the Preliminary Injunction Order on two business days notice. See, e.g., Fidelity Mortgage, 550 F.2d at 55 (Rule 11-44 under the former Bankruptcy Act, which provided that a petition under Chapter XI of the Bankruptcy Act automatically stayed all proceedings against the debtor without prior notice to creditors, did not violate creditors' due process rights in light of the fact that it provided for a procedure for lifting the automatic stay).

## C. The Petitioner Satisfies the Requirements for a Permanent Injunction

27. The Petitioner has satisfied the Second Circuit's standards for a permanent injunction. That standard requires that a court consider whether (i) the plaintiffs are successful on the merits of their claim, (ii) there is no available remedy at law, and (iii) the balance of equities favors granting such relief. Travellers Int'l AG v. Trans World Airlines, Inc., 722 F. Supp. 1087, 1096 (S.D.N.Y. 1989), aff'd 41 F.3d 1570 (2d Cir. 1994); New York State National Organization for Women v. Terry, 704 F. Supp. 1247, 1262 (S.D.N.Y.), aff'd as modified, 886 F.2d 1339 (2d Cir. 1989), cert. denied, 495 U.S. 947 (1990).

8

**D.      Likelihood of Success on the Merits**

28.      The Petitioner and the Company will be entitled to relief identical to the provisional relief requested in the Application upon recognition of the Korean Bankruptcy Proceeding as a foreign main proceeding. See 11 U.S.C. §§ 1520 and 1521. Thus, the Petitioner must show that the Court will likely find that (i) the Korean Bankruptcy Proceeding is a Foreign Proceeding, (ii) the Petitioner is a Foreign Representative, and (iii) the Korean Bankruptcy Proceeding is a Foreign Main Proceeding in order to show a likelihood of success on the merits. Samsun, which is also a Korean company in rehabilitation proceedings, obtained an order in its Chapter 15 case, Annex B hereto, dated April 21, 2009, granting recognition of its DRBA proceeding as a foreign main proceeding.

(i)      **The Korean Bankruptcy Proceeding is a Foreign Proceeding**

29.      Section 101(23) of the Bankruptcy Code defines a foreign proceeding as:

> A collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). As more fully described in the supporting documents to the Chapter 15 Petition, the Korean Bankruptcy Proceeding was commenced pursuant to the DRBA, which governs the Company's rehabilitation and provides for a centralized procedure by which the Company's creditors have the opportunity to file their claims in the Korean Bankruptcy Proceeding. As such, the Korean Bankruptcy Proceeding is a collective judicial proceeding in a foreign country under a law (the DRBA) relating to adjustment of debt in which the assets and affairs of the Company are subject to control or supervision by the Korean Bankruptcy Court.

30.      The Korean Bankruptcy Proceeding is (i) a collective judicial proceeding in a foreign country, (ii) in which the assets and affairs of the debtor are subject to supervision by a

9

foreign court, and (iii) for the purpose of reorganization or liquidation. Moreover, the DRBA is a law relating to insolvency or adjustment of debt. Thus, under the plain meaning of section 101(23) of the Bankruptcy Code, the Korean Bankruptcy Proceeding is a foreign proceeding. Accordingly, this Chapter 15 case concerns a foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code. See, Samsun, Annex B.

    **(ii)**    **The Petitioner is a Foreign Representative**

31.    The Chapter 15 case was commenced by an authorized "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, which provides that:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's asserts or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

32.    As an individual, the Petitioner is a "person" within the meaning of section 101(41) of the Bankruptcy Code. Further, the Petitioner as the duly appointed receiver of the Company is authorized to act as a representative of the Company with respect to the Korean Bankruptcy Proceeding. Accordingly, the Petitioner is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code and is therefore entitled to commence this case under Chapter 15 of the Bankruptcy Code. (iii) The Korean Bankruptcy Proceeding is a Foreign Main Proceeding

33.    The Bankruptcy Code provides that a foreign proceeding for which Chapter 15 recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests. See 11 U.S.C. § 1517(b)(1). While the Bankruptcy Code does not define "center of main interests," it does provide that, absent

evidence to the contrary, the debtor's registered office is presumed to be the center of the debtor's main interests. See U.S.C. § 1516(c); see In re Bear Stearns Hogh-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007), aff'd 389 B.R. 325 (S.D.N.Y. 2008) (noting that presumption that debtor's center of main interests is the place of its registered office may be "rebutted by evidence to the contrary").

34.    The Company's registered office is located in Seoul, Korea and, in accordance with section 1517(b), in the absence of evidence to the contrary, Korea should be found to be the center of the Company's main interests. In re Sphinx, Ltd., 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006) (noting that the debtors' center of main interests are presumed to be the Cayman Islands, where the debtors are registered). The assertion that Korea is the center of the Company's main interests is further supported by the fact that the Company is incorporated under Korean Law. Additionally, the Company's head office is located at 526 Daewoo Foundation Building, 5-Ga, Namdaemunno, Chung-Gu, Seoul, Korea where it undertakes its daily business activities. Thus, Korea is "ascertainable by third parties" as the Company's center of main interests. See In re Bear Sterns, 374 B.R. at 130 (noting that debtor's center of main interests is the United States where the debtors "conduct the administration of their interests on a regular basis is therefore ascertainable by third parties"). Accordingly, absent evidence to the contrary, given that the Korean Bankruptcy Proceeding is pending in Korea, the center of the Company's main interests, it should be recognized as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code.

**(iii)    Inadequacy of Legal Remedy**

35.    Irreparable harm is one basis for establishing the inadequacy of any legal remedy. Travellers, 722 F. Supp. at 1096. It has been consistently held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." In re Lines,

11

81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988). As described above and in the Application, the risk of such irreparable harm is clearly present here and was recognized by this Court in Samsun in like circumstances. See Order dated April 21, 2009 (Docket #24, Annex B). The successful administration of the Company requires that the resolution of all claims be centralized in the Korean Bankruptcy Proceeding without creditors such as Saga Forest obtaining preferences and the prevention of loss of the Company's assets.

**(iv)** **The Balance of the Hardship Tips Decidedly in Favor of the Petitioner**

36.     The balancing of the hardships tips decidedly in favor of the Petitioner in this Application. Enjoining all litigation against the Company and the attachment, seizure, transfer and lien and/or judgment enforcement of any parties as against the Company will prevent their permanent loss to the estate and will cause minimal hardship to any persons subject to the injunctions, including Saga Forest. Indeed, all of the Company's creditors will benefit from the Petitioner's efforts to preserve and maximize the value of the Company's estate as such an injunction will prevent the Company's assets from being permanently lost. All creditors, including Saga Forest, will be able to participate in the Korean Bankruptcy Proceeding on an equitable basis with all other similarly situated creditors. See Samsun.

**POINT II**

**THE KOREAN BANKRUPTCY PROCEEDING SHOULD BE RECOGNIZED AS A FOREIGN MAIN PROCEEDING**

**A.** **This Chapter 15 Case Was Properly Commenced**

37.     This Chapter 15 case was duly and properly commenced as required by sections 1504 and 1509 of the Bankruptcy Code by the filing of a petition for recognition of a foreign proceeding under section 1515(a) of the Bankruptcy Code, accompanied by all documents and information required by section 1515(b) and (c). See In re Bear Stearns Hogh-Grade Structured

12

Credit Strategies Master Fund, Ltd., 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."), aff'd 389 B.R. 325 (S.D.N.Y. 2008). As the Chapter 15 petition satisfies the requirements set forth in section 1515 of the Bankruptcy Code, this Chapter 15 case has been properly commenced by the Petitioner.

**B.     This Court Has Jurisdiction to Recognize the Pending Korean Bankruptcy Proceeding and Grant the Relief Requested**

38.     This Court has jurisdiction to hear and determine cases commenced under the Bankruptcy Code and all core proceedings arising thereunder pursuant to 28 U.S.C. §§ 157 and 1334, as well as the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984. The Petitioner seeks relief under Chapter 15 of the U.S. Bankruptcy Code. Further, recognition of foreign proceedings and other matters under Chapter 15 of the Bankruptcy Code are expressly designated to be a core proceeding, 28 U.S.C. § 157(b)(2)(P). In addition, it is respectfully submitted that venue in this District is consistent with the interests of justice and the convenience of the parties, as provided by 28 U.S.C. § 1410(3). In that venue is proper in this District, and because this Court has jurisdiction over Chapter 15 cases generally, this Court may properly consider the Petition and the Petitioner's request for recognition of the Korean Proceeding and related relief. Moreover, six of the thirteen U.S. actions against the Company are filed in this District. See Rule 1007(a)(4) List.

**C.     This Case Is A Proper Case Under Chapter 15**

39.     Chapter 15 of the Bankruptcy Code applies when assistance is sought in the United States by a foreign representative in connection with a foreign proceeding. See 11 U.S.C. § 1501(b)(1). One of the objectives of Chapter 15 is the "fair and efficient administration of

13

cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3). This case has been commenced for the purpose of obtaining the assistance of this Court to ensure the effective and economical administration of the Korean Bankruptcy Proceeding under Korean law by, among other things, restricting parties from taking action against the Company within the jurisdiction of the United States, which may undermine the unified, collective insolvency process that is currently taking place in the Korean Bankruptcy Court.

### (i)     The Case Concerns a Foreign Proceeding

40.     Section 101(23) of the Bankruptcy Code defines a foreign proceeding as:

> A collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

41.     As more fully described in the Verified Petition and in the declaration of Chi Yong Rim (the "Rim Declaration"), the Korean Bankruptcy Proceeding was commenced pursuant to the DRBA, which governs the Company's rehabilitation and provides for a centralized procedure by which the Company's creditors have the opportunity to file their claims in the Korean Bankruptcy Proceeding. As such, the Korean Bankruptcy Proceeding is a collective judicial proceeding in a foreign country under a law (the DRBA) relating to adjustment of debt in which the assets and affairs of the Company are subject to control or supervision by the Korean Bankruptcy Court.

42.     The Korean Bankruptcy Proceeding is (i) a collective judicial proceeding in a foreign country, (ii) in which the assets and affairs of the debtor are subject to supervision by a

14

foreign court, and (iii) for the purpose of reorganization or liquidation. Moreover, the DRBA is a law relating to insolvency or adjustment of debt. Thus, under the plain meaning of section 101(23) of the Bankruptcy Code, the Korean Bankruptcy Proceeding is a foreign proceeding. Thus, this Chapter 15 case concerns a foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code. See, Samsun.

### (ii) The Case Was Commenced by a Foreign Representative

43.    The Chapter 15 case was commenced by an authorized "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, which provides that:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's asserts or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24). As an individual, the Petitioner is a "person" within the meaning of section 101(41) of the Bankruptcy Code. Further, as explained in the Rim Declaration, pursuant to the DRBA and the Commencement Order, the Petitioner is authorized to act as a representative of the Company with respect to the Korean Bankruptcy Proceeding. The Petitioner, as the receiver of the Company duly appointed by the Korean Bankruptcy Court, is charged with the Company's affairs, including preserving and protecting its assets. Rim Dec., ¶ 8.   Accordingly, the Petitioner is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code and therefore entitled to commence this case under Chapter 15 of the Bankruptcy Code.

### (iii) The Foreign Proceeding Should be Recognized as a Foreign Main Proceeding

44.    This Court should recognize the Korean Bankruptcy Proceeding as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code. The Bankruptcy Code provides that a foreign proceeding for which Chapter 15 recognition is sought must be

15

recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests. See 11 U.S.C. § 1517(b)(1). While the Bankruptcy Code does not define "center of main interests," it does provide that, absent evidence to the contrary, the debtor's registered office is presumed to be the center of the debtor's main interests. See U.S.C. § 1516(c); see In re Bear Stearns, 374 B.R. at 130 (noting that presumption that debtor's center of main interests is the place of its registered office may be "rebutted by evidence to the contrary").

45.     The Company's registered office is located in Korea and, in accordance with section 1517(b), in the absence of evidence to the contrary, Korea should be found to be the center of the Company's main interests. In re Sphinx, Ltd., 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006) (noting that the debtors' center of main interests are presumed to be the Cayman Islands, where the debtors are registered). The assertion that Korea is the center of the Company's main interests is further supported by the fact that the Company is incorporated under Korean Law. Rim Decl. ¶ 15. Additionally, the Company's head office is located at in Seoul, Korea where it undertakes its daily business activities. All meetings of the Company's directors and senior managers have been held in Korea and the Company holds itself out to the world as operating from Korea in its letter headings and web site. Thus, Korea is "ascertainable by third parties" as the Company's center of main interests. See In re Bear Sterns, 374 B.R. at 130 (noting that debtor's center of main interests is the United States where the debtors "conduct the administration of their interests on a regular basis is therefore ascertainable by third parties"). Accordingly, absent evidence to the contrary, given that the Korean Bankruptcy Proceeding is pending in Korea, the center of the Company's main interests, it should be recognized as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code.

133008.01600/6768793v.9

**D.    Recognition of the Korean Bankruptcy Proceeding Is Proper and Should be Granted**

46.    As discussed above, the Korean Bankruptcy Proceeding is a foreign main proceeding within the meaning of section 1502 of the Bankruptcy Code, the Petitioner qualifies as a foreign representative and the Petition meets the requirements of section 1515 of the Bankruptcy Code. Thus, under section 1517(a) of the Bankruptcy Code, the Court should enter an order recognizing the foreign proceeding. 11 U.S.C. § 1517 (stating that an order recognizing a foreign proceeding "shall be entered" if all of the requirements for recognition have been met). The legislative history of Chapter 15 states that: "[T]he decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of this section [section 1517], which incorporates the definition in section 1502 and section 101(23) and (24), are all that must be fulfilled to attain recognition." H.R. Rep. 109-31, pt. 1 (2005). Thus, recognition under section 1517(a) of the Bankruptcy Code is mandatory where, as here, a Chapter 15 petition meets the statutory requirements.

47.    Section 1506 of the Bankruptcy Code provides that "[n]othing in [Chapter 15] prevents the court from refusing to take an action governed by [Chapter 15] if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. As the legislative history explains, "[section 1506] follows the Model Law article 5 exactly, [which] is standard in UNCITRAL texts, and has been narrowly interpreted on a consistent basis in courts around the world. The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States." H.R. Rep. 109-31, pt. 1 (2005).

48.    To the contrary, recognition of the Korean Bankruptcy Proceeding in the United States would be consistent with the fundamental public policy of United States Courts of

17

extending comity to foreign proceedings. See, Samsun. As one court noted, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction." Cornfeld v. Investors Overseas Svcs., Ltd., 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979).

49.     Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial act of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 U.S. 113, 164 (1895). Under former section 304 of the Bankruptcy Code the court was required to analyze whether foreign reorganization procedures were consistent with United States public policy before granting comity. "Section 304(c)(4) represents a legislative choice to require courts to consider differences between American priority rules and those applicable to the foreign proceeding in determining whether affording comity will be repugnant to American public policies." In re Treco, 240 F.3d 148, 158 (2d Cir. 2001). Under former section 304 of the Bankruptcy Code, a court in this District found that affording comity to Korean bankruptcy law was appropriate:

> The record confirms that Korean bankruptcy law, and in particular the Company Reorganization Act, is substantially similar to United States Law, does not discriminate against non-Korean creditors, and comports with American notions of fairness and due process. The Korean Proceeding provides many of the same procedural safeguards as would apply in a Chapter 11 case in the United States. The distribution of proceeds pursuant to Onse's Plan or Reorganization is substantially in accordance with United States law. Therefore, affording comity to the Foreign Proceeding is warranted and appropriate.

In re Petition of Kyu-Byung Hwang, 309 B.R. 842, 846 (Bankr. S.D.N.Y. 2004).[2] The requested relief is not manifestly contrary to United States public policy, but rather fully consistent with that granted in other ancillary cases in this District under both former section 304 and Chapter 15 of the Bankruptcy Code.

50.     Moreover, the relief requested in the Verified Petition is consistent with, and critical to effectuate, the relief and protections provided by the Korean Bankruptcy Proceeding. In order to preserve the interest of the Company and all of its constituents, it is imperative that all claims and distributions be administered uniformly in accordance with Korean law. If creditors in the United States and elsewhere are not stayed, the orderly determination and settlement of claims in the Korean Bankruptcy Proceeding may be jeopardized and estate resources may have to be expended unnecessarily to defend collection and other actions brought in the United States in contravention of the Korean Bankruptcy Proceeding.

---

[2]     In addition to Samsun at least three other Korean bankruptcy proceedings have received recognition as foreign main proceedings under Chapter 15 of the Bankruptcy Code. In re Daewoo Corporation, Case. No. 06-12242 (Bankr. S.D.N.Y.); In re Youngchang Co., Case No. 06-40043 (Bankr. WD Wa.); and In re TriGem Computer Inc., Case No. 05-50052 (Bankr. CD Cal.). Additionally, Korean bankruptcy proceedings have been granted comity by United States Courts. See, Daewoo Motors Corp. v. GM Motors Corp., Case. No. 04-158878, 2006 WL 2327562 (11th Cir. (Fla.) August 11, 2006) (finding that district court did not abuse its discretion when it granted comity to the order of a Korean court).

## CONCLUSION

WHEREFORE, Petitioner respectfully requests that the Court grant the related temporary stay relief, and grant recognition of the Korean Bankruptcy Proceeding as a foreign main proceeding and that the Court grant Petitioner such other and further relief as may be just and proper.

Dated: New York, New York
September 15, 2009

Respectfully submitted,

BLANK ROME LLP

By: _____
Jeremy Harwood
405 Lexington Avenue
New York, New York 10174-0208
(212) 885-5000

Attorneys for the Petitioner

20