**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

# Minutes of Proceedings

_____

Date: **October 5, 2011**

-------------------------------------------------------------X

**In re:**

**Daewoo Logistics Corporation,**

        **Debtor in a foreign proceeding**

-------------------------------------------------------------X

**Chapter 15**

**Case No. 09-15558 (brl)**

| Present: | Hon. **Burton R. Lifland** | **Monica Saenz de Viteri** | **ECRO** |
|---|---|---|---|
| | Bankruptcy Judge | Courtroom Deputy | Court Reporter |

**Proceedings:**

    ☒ **Daewoo's Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code for an Order Finding Coastal in Violation of the Recognition Order**

**Orders:**
- ¤ **Relief sought in the Motion:**
  - ☒ **Denied**  ¤ **Granted**  ¤ **Dismissed**  ¤ **Awarded by Default**
- ¤ **Matter taken under advisement**
- ¤ **Formal order or Judgment to enter**
- ¤ **Confirmation/modification of plan**  ¤ **granted**  ¤ **denied**
- ☒ **As per the record of the hearing held on October 5, 2011, the Motion is hereby DENIED. Attached hereto is the Bench Memorandum Denying Daewoo's Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code for an Order Finding Coastal in Violation of the Recognition Order.**

    **It is So Ordered.**

**BY THE COURT**                                          **FOR THE COURT:** Vito Genna, Clerk

 /s/ Burton R. Lifland                October 5, 2011        By: /s/ Monica Saenz de Viteri
**United States Bankruptcy Judge**           **Date**                  **Deputy Clerk**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 15 |
| Daewoo Logistics Corporation, | Case No. 09-15558 (BRL) |
| Debtor in a Foreign Proceeding. | |

-----------------------------------------------------------x

**BENCH MEMORANDUM DENYING DAEWOO'S MOTION PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE FOR AN ORDER FINDING COASTAL IN VIOLATION OF THE RECOGNITION ORDER**

Before this Court is the motion through order to show cause of Daewoo Logistics Corporation ("Daewoo"), pursuant to sections 105(a) and 362 of the Bankruptcy Code (the "Code"), seeking an order directing Coastal Cargo Company Inc. ("Coastal") to release $225,000 posted by Daewoo as security for Coastal releasing the M/V Crystal Ocean (the "Vessel"), a vessel chartered, but not owned, by Daewoo based on Coastal's arrest of the Vessel in violation of the stays imposed by this Court's Recognition Order (defined below). Upon review of the papers and after oral argument, Daewoo's motion is hereby DENIED.

**BACKGROUND**

Daewoo, a Korean company involved in the shipping and trading businesses, applied for rehabilitation under the Republic of Korea's Debtor Rehabilitation and Bankruptcy Act (the "DRBA") on July 3, 2009. On July 23, 2009 the Korean court (the "ROK Court") handling Daewoo's rehabilitation (the "ROK Rehabilitation") issued a commencement order for the same. Pursuant to chapter 15 of the Code, on October 21, 2009, this Court entered an order (the "Recognition Order") granting Daewoo's petition for recognition of the foreign main proceeding. *See* Order Signed on 10/21/2009 at 10:45 AM Granting Recognition and Relief in Aid of Foreign

1

Main Proceeding Pursuant to 11 U.S.C. Sections 1517M, 1520 and 1521, Dkt. No. 17. The Recognition Order expressly granted protection under sections 361 and 362 of the Code to Daewoo and its property within the United States, as enumerated in section 1520(a) of the Code, and stayed "the commencement or continuation of any action or proceeding . . . concerning the assets, rights, obligations or liabilities of [Daewoo]" to the extent such proceedings were not stayed under section 1520(a) of Code (the "Recognition Order Stays").

The ROK Rehabilitation was closed on June 8, 2011. Shortly thereafter, Coastal filed a complaint in the Southern District of Texas (the "Texas Court") seeking to arrest the Vessel for unpaid prepetition stevedoring services supplied to the Vessel, pursuant to its *in rem* maritime lien on it. The Texas Court issued a warrant to seize the Vessel, in accordance with which the Vessel was arrested. Then, on June 14, 2011 Daewoo filed a motion for entry of an order to show cause prohibiting Coastal from continuing the proceeding against the Vessel. The Court held a hearing on the order to show cause on June, 16 2011. Daewoo did not notify the Court and the parties of the changed status of the ROK Proceeding until June 25, 2011, see Declaration of Bo Youl Hur in Support of the Petitioner's Obligations under 11 U.S.C. Sec. 1518 to Advise the Court of any Substantial Change in the Status of Daewoo's Korean Proceeding, Dkt. No. 32, and the Court was unaware and uninformed of the close of the ROK Proceeding until it *sua sponte* raised the issue at the hearing on the order to show cause, see Transcript Regarding Hearing held on June 16, 2011 at 11:02 AM RE: Chambers Conference at 6, Dkt. No. 37 [hereinafter the "Transcript"] ("The Court: The problem I have with granting relief today, among other things, is I'm a little unsure under 1518 as to the status of the Korean proceeding. If you're not familiar with 1518, it's incumbent upon the liquidators of a foreign proceeding to advise this Court as to any change in status or basically the current status of that proceeding.")

2

On June 16, 2011, the Court entered the order to show cause but noted that Daewoo must file a section 1518 statement in order to clarify the status of the Korean Proceeding. *See* Transcript at 9 ("I would have expected and I do expect that I will get in due course a report as to [the Status of the ROK Proceeding]."). Following this Court's granting that order, Coastal agreed to accept substitute security of $225,000 in exchange for release of the Vessel.

Daewoo argues that the arrest proceeding violated the Recognition Order Stays and accordingly requests entry of an order: (1) directing Coastal to release to Daewoo its $225,000; (2) holding Coastal in contempt of the Recognition Order; and (3) sanctioning Coastal for violation of the same in the amount of Daewoo's reasonable attorneys' fees and costs. Coastal counters, *inter alia*, that the ROK Rehabilitation closed before it sought to have the Vessel arrested and, therefore, the arrest did not violate the Recognition Order Stays.

## DISCUSSION

The threshold issue before this Court is whether the Recognition Order Stays are still in effect after the close of the ROK Rehabilitation. In light of the ancillary nature of Chapter 15, this Court finds that absent exigent circumstances, a stay imposed pursuant to chapter 15 is normally coterminous with the stay in the corresponding foreign proceeding and, accordingly, the Stays terminated at the close of the ROK Rehabilitation.

Chapter 15 incorporates the Model Law on Cross–Border Insolvency promulgated by the United Nations Commission on International Trade Law ("UNCITRAL"). 11 U.S.C. § 1501(a). Its intended purpose is to promote cooperation between United States and foreign courts in the efficient administration of cross-border insolvencies. *See* 11 U.S.C. § 1501; *In re Oversight & Control Commission of Avanzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008). Section 1504 makes clear that a case commenced under chapter 15 is "ancillary" to a foreign proceeding

3

pending elsewhere, *In re JSC BTA Bank*, 434 B.R. 334, 340 (Bankr. S.D.N.Y. 2010), and that the domestic court granting recognition acts "in aid of the [foreign] main proceeding," H.R. Rep. No. 109-31(I), at 108 (2005), *reprinted in* 2005 U.S.C.C.A.N.N. 88, 171. Chapter 15 therefore specifically contemplates that principles of comity and cooperation with a domestic court's foreign counterparts should inform the extent to which that court makes post-recognition relief available to a foreign representative. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y.2008) ("[R]elief [post-recognition] is largely discretionary and turns on subjective factors that embody principles of comity."). Indeed, "[d]eference to foreign insolvency proceedings will often facilitate the distribution of the debtor's assets in an equitable, orderly, efficient, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion." *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 161 (Bankr. C.D.Cal. 2005)).

Upon consideration of Chapter 15 and in light of its international origins and applications, Daewoo fails to establish that the Recognition Order Stays applied to the Vessel at the time of its arrest. The purposes of the Recognition Order Stays militate against finding otherwise. An automatic stay generally intends to prevent collection efforts against debtors, so as to provide breathing room for their devising a plan to emerge from dire financial straits, as well as prevent creditors' independently pursuing remedies that could deplenish debtors' assets. *See In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 862 (Bankr. C.D. Cal. 2008). The Recognition Order Stays here accordingly sought to preclude actions against Daewoo's assets in the United States in order to facilitate its orderly rehabilitation in the ROK proceeding by preventing parties from taking actions that would undermine the proceeding. But once the ROK Rehabilitation closed, that purpose could no longer be served. Daewoo no longer needs time to devise a plan

4

and preventing creditors' pursuit of alternative remedies would no longer provide the above-mentioned breathing room.

It follows that continuing the Recognition Order Stays after the expiration of the stay in the Korean Proceeding is contrary to the ancillary nature of Chapter 15 because it unnecessarily burdens creditors by preventing their pursuit of United States assets when such action may not be prohibited in Korea. Furthermore, various provisions in Chapter 15 of the Code, which recognize that the status of foreign proceedings can change and give domestic courts flexibility to condition relief or modify previously granted relief in light of such changes, equally compel this Court's conclusion. *See In re SPhinX, Ltd.*, 351 B.R. 103, 113 (Bankr. S.D.N.Y. 2006). Section 1517(d), for example, permits the modification or termination of recognition if the grounds for granting it "have ceased to exist." And section 1518(1) requires the foreign representative to *promptly* file a notice of any substantial change of status in the foreign proceeding, because "changes occur in the foreign proceeding that would have affected the . . . relief granted on the basis of recognition." UNCITRAL Legislative Guide on Insolvency Law, U.N. Pub. Sales. No. E.05.V.10, p. 340 (2005), available at http://www.uncitral.org/pdf/english/texts/insolven/05–80722—Ebook.pdf (last accessed Oct. 4, 2011); *see* Official Records of the General Assembly, Fifty-Second Session, Supplement No. 17 (A/52/17 ), ¶ 114 ("It was suggested that [a] . . . provision should be made to require the foreign representative to inform the court . . . of the status of the foreign proceeding (*in particular of its termination* or its transformation from a liquidation proceeding into a reorganization proceeding). It was said that giving such information to the court might be important in all circumstances . . . .") (emphasis added); *see also* 11 U.S.C. § 1508 ("In interpreting this chapter, the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with

5

the application of similar statutes adopted by foreign jurisdictions."). Here, as discussed above, the Court sees no reason why the Stays imposed by the Recognition Order should continue past the close of the Korean Proceeding. As such, the stays here were coterminous with the stay in the Korean Proceeding and were not in effect when the Vessel was arrested. It is important to note, however, that the close of a foreign proceeding does not prevent a foreign representative from enforcing a Chapter 15 automatic stay in all scenarios. For instance, a foreign representative would still be able to enjoin an entity that violated a stay order prior to the closing of the foreign proceeding. *See, e.g.*, *In re Oversight and Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 533-34 (Bankr. S.D.N.Y. 2008) (granting recognition after approval of a plan in the foreign proceeding to adjudicate a stay violation that occurred pre-approval). Additionally, relief may be available after close of the foreign proceeding under section 1507 of the Code, which allows a court to grant additional assistance to the foreign representatives, but there was no formal request for additional assistance at the time notice of the substantial change in the ROK Proceeding was given.

The Court does not here decide whether Coastal is entitled to enforce its maritime lien and, consequently, whether it can retain the $225,000 posted by Daewoo. As the ROK Court has approved Daewoo's rehabilitation plan, enforcement of Coastal's lien may well violate the DRBA, which provides that once a rehabilitation plan is approved, the debtor is exempt from all claims, with the exception of rights recognized pursuant to the rehabilitation plan or the provisions of the DRBA.[1] *See* Declaration of Bo Youl Hur, Dkt. No. 40, at ¶ 11 ("The

---

[1] Coastal's claim amounts to KRW 187,181,862 (USD $148,298.10). According to the rehabilitation plan, 68%, or KRW 127,283,666, has been converted into shares to be issued by Daewoo Logistics and the remaining percentage is to be paid in installments over eight years beginning in 2012. Coastal may consent to immediate payment of its cash claim based on a present value discount of 8.75% per annum; accordingly, the present immediate cash portion of Coastal's claim is $28,339.30 as of September 31, 2011. Declaration of Bo Youl Hur, Dkt. No. 40, at ¶¶ 4-10. Consistent with its position that the *in rem* lien was not affected by the Korean Proceeding, Coastal has refused to accept the payments outlined in the rehabilitation plan.

rehabilitation secured claimants or the rehabilitation claimants are in principle not allowed to receive repayment unless such repayment is made in accordance with the rehabilitation plan"); *see also In re Ho Seok Lee*, 348 B.R. 799, 803 (Bankr. W.D. Wash. 2006) (granting a permanent injunction preventing a creditor from recovering debt in excess of the amounts provided by the debtor's Korean plan). However, this only discusses Daewoo's *in personam* liability for the prepetition debt. It does not discuss, and the parties did not brief, the effect of Korean rehabilitation approval on an *in-rem* maritime lien against a vessel not owned by Daewoo. In fact, Daewoo first mentioned that Coastal's actions violated the ROK Rehabilitation approval in its reply to Coastal's opposition; the order to show cause only sought to enjoin Coastal because of its violation of the Recognition Order Stays. Given these DRBA-related issues, therefore, the ROK Court is the more appropriate forum to determine the effect of rehabilitation approval under Korean law, particularly in the instant proceeding where the issue is whether an *in-rem* maritime lien is extinguished by the rehabilitation plan approved by the ROK Court. *See Universal Oil Ltd v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 101-02 (2d Cir. 2005) (declining to "address the murky question of whether the bankruptcy court improperly wielded the admiralty power that is within the exclusive province of the federal courts" because the lienors, by submitting their maritime lien claims to the bankruptcy court for adjudication, "submitted themselves to the bankruptcy court's equitable jurisdiction, thereby invoking one of admiralty's exceptions to the exclusivity of the in rem proceeding") (citations and quotations omitted). Here, Coastal had treatment of its claim approved in Korea and the effect of rehabilitation approval will be determined under Korean law. As such, the ROK Court should determine whether Coastal's arrest of the Vessel violated the rehabilitation order. In view of the foregoing, the parties are also free to litigate the issues relating to the *in rem* maritime lien before

7

the Texas Court.

## CONCLUSION

In light of the foregoing, Daewoo's motion for an order declaring that Coastal must release the $225,000, holding Coastal in contempt of the Recognition Order, and sanctioning Coastal is DENIED.

**IT IS SO ORDERED.**

Dated: New York, New York
      October 5, 2011

                                  /s/ Burton R. Lifland
                                  United States Bankruptcy Judge